DeAnne Casperson, Esq. (ISB No. 6698)
dcasperson@workandwage.com
Amanda E. Ulrich, Esq. (ISB No. 7986)
aulrich@workandwage.com
Ryan S. Dustin, Esq. (ISB No. 8683)
rdustin@workandwage.com
CASPERSON ULRICH DUSTIN PLLC
356 W. Sunnyside Rd., Suite B
Idaho Falls, ID 83402
Telephone: (208) 524-0566
Facsimile: (208) 745-2523

Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| HANNAH PUCKETT,<br><br>                Plaintiff,<br>v.<br><br>GRANITE DESIGNS, LLC, and MICHAEL SPEARS,<br><br>                Defendants. | Case No.<br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL**<br><br>Filing fee: $402.00 |

COMES NOW Plaintiff Hannah Puckett, by and through her counsel Casperson Ulrich Dustin PLLC, for cause of action alleges and complains against Defendants Granite Designs, LLC, and Michael Spears, as follows:

**JURISDICTION AND VENUE**

1. This is an action brought under the Idaho Wage Claim Act ("IWCA") and the Fair Labor Standards Act ("FLSA").

2. This Court has jurisdiction pursuant to 28 U.S.C. § 1331 and 1367.

1 – COMPLAINT AND DEMAND FOR JURY TRIAL

3. Venue in this action properly lies in the United States District Court for the District of Idaho pursuant to 28 U.S.C. § 1391(b) because the events giving rise to the claims in this action occurred in this judicial district.

## PARTIES

4. Plaintiff Hannah Puckett ("Plaintiff") is a resident of the United States of America, who resides in Bonneville County, Idaho.

5. Defendant Granite Designs, LLC ("Granite") is an Idaho limited liability company with its principal place of business in Jefferson County, Idaho.

6. Defendant Michael Spears ("Spears") is a resident of the State of Washington, and does business in Jefferson County, Idaho.

7. At all times relevant to this Complaint, Granite and Spears were "employers" for purposes of the FLSA and IWCA. Consequently, their conduct is properly regulated by the FLSA and IWCA.

## FACTS COMMON TO ALL COUNTS

8. Plaintiff realleges and incorporates by reference paragraphs 1 through 7 as though fully set forth herein.

9. Plaintiff was recruited to work as a salesperson for Granite in September/October 2021 by Granite manager Candice Preston ("Preston").

10. When Plaintiff was recruited for and interviewed for the salesperson position, Preston offered Plaintiff a wage of $14.00 per hour, and a commission of 4% of every job she sold or worked on.

11. Plaintiff accepted employment with Granite in October 2021, under those terms and conditions.

12. After Plaintiff earned her first paycheck, Preston and bookkeeper Patricia Willey ("Willey") both congratulated Plaintiff on her first sale she accomplished all on her own.

13. While performing general manager duties for Granite, Preston was also managing Spears' other company, The Plumber, Inc.

14. At Granite, in addition to Preston acting as general manager of the company, Daventry Spears ("Daven") worked for Granite as its production manager. Daven is Spears' son.

15. Plaintiff excelled at her position and was given more and more responsibility.

16. Despite earning commissions, Plaintiff was not paid her commissions.

17. Preston began spending more and more time managing The Plumber, Inc. and away from Granite.

18. Because Preston was busy with The Plumber, Inc., Plaintiff began taking on various management duties previously performed by Preston.

19. In or around January 11, 2022, Spears called Plaintiff on her personal cell phone while she was at work. Daven was present at the time as well and overheard the call.

20. During the call, Spears informed Plaintiff that he and Daven had been talking and stated that Preston was overwhelmed managing both Granite and The Plumber, Inc., and that Spears and Daven were both frustrated by that situation.

21. Spears then stated to Plaintiff that she had learned everything Preston had trained her on and asked Plaintiff if she would be interested in taking over Preston's management duties at Granite so Preston could move full time to running The Plumber, Inc.

22. Spears offered Plaintiff a raise to $17.00 per hour, and further, offered her a 7% commission on all sales and jobs she worked on if she would take over Preston's job.

23. Plaintiff accepted the offer, but she made it clear that she was in massage school and would need to modify her schedule in order to attend her classes and clinics, which would start in March 2022.

24. Spears agreed and informed Plaintiff that the modified schedule was no problem and that Daven would ensure the office continued to run smoothly to the extent Plaintiff had to work a modified schedule for school.

25. During the next week or so, Preston was only at Granite to pass off to Plaintiff whatever jobs of hers were left. Preston was no longer doing any work for Granite as of January 18, 2022, and Plaintiff had completely taken over Preston's job duties by that time.

26. Despite Plaintiff taking on Preston's management position, Granite did not pay Plaintiff the $17.00 per hour she was promised in order to induce her to take the management position.

27. Further, although Plaintiff continued to sell numerous new jobs and work on them, Granite did not pay Plaintiff her commissions at all, let alone the increased commissions she was promised to induce her to take the management position.

28. Plaintiff was concerned about Granite's failure to pay her commissions and the hourly wage promised, but she gave Granite the benefit of the doubt that Granite would eventually pay her as promised.

29. On or around March 23, 2022, through Mach 27, 2021, Plaintiff traveled to Washington state for vacation. Plaintiff discussed with and obtained permission from Daven prior to her trip to work remotely while out of the office. During her trip, Plaintiff responded to inquiries from clients, responded to inquiries from Daven, and monitored her work email, all as she would have done had she physically been in the office. The only job duty Plaintiff did not perform

while out of the office was answering the office phone, which was not possible since she was not physically in the office.

30. Though Plaintiff turned in her work hours for the work she performed during her trip, Granite informed her that she did not have "vacation pay" and that she would not be paid for her hours worked during her trip. Plaintiff explained that she was not using vacation pay but was turning in her hours that she actually worked remotely.

31. Ultimately, Spears paid Plaintiff for only two hours of remote work, even though Plaintiff worked 13 hours remotely.

32. On or around March 29, 2022, Plaintiff asked Spears via text when she could expect to receive her wages from her pay raise and her commission. Spears ignored Plaintiff's text.

33. Though Spears ignored her text, Plaintiff received a pay raise in her next paycheck, beginning on April 3, 2022. However, the raise was only to $15.00 per hour instead of $17.00 per hour as promised and agreed.

34. Because Plaintiff had still not received any information from Spears regarding her unpaid wages and commission, Plaintiff contacted bookkeeper Willey via text message at 9:48 am on April 11, 2022. Plaintiff asked Willey if she knew how Plaintiff could go about getting her unpaid commission.

35. In response, Willey stated she would ask Spears about the commission on Plaintiff's behalf.

36. A little after 6:00 pm that evening, Spears texted Plaintiff stating, "I've sent your termination in your email thanks for your work."

/

/

/

## COUNT I
## VIOLATION OF THE FLSA
### (Failure to pay wages)

37. Plaintiff realleges and incorporates by reference paragraphs 1 through 36 above, as though fully set forth herein.

38. Granite and Spears are subject to the requirements of the FLSA.

39. Plaintiff earned wages and commission for work performed for which she was not paid, including time she worked remotely.

40. Granite and Spears failed to pay Plaintiff for some or all of the hours she worked remotely.

41. Granite and Spears are liable to Plaintiff for failure to pay such wages.

42. As a direct and proximate result of Granite and Spears' actions and/or failure to act, Plaintiff suffered a loss of earnings.  Plaintiff is therefore entitled to compensation for her unpaid wages, such amount to be proven at trial.

43. Granite and Spears' failure to pay Plaintiff for all hours worked was not based on good faith or reasonable grounds, or a belief that such failure is not in violation of the FLSA.  Therefore, pursuant to 29 U.S.C. § 216(b), Plaintiff is entitled to liquidated damages in an amount equal to the wages which she was not paid.

## COUNT II
## VIOLATION OF THE FLSA
### (Retaliation)

44. Plaintiff realleges and incorporates by reference paragraphs 1 through 43 above, as though fully incorporated herein.

45. The FLSA prohibits retaliation against an employee because she has filed any complaint or instituted or caused to be instituted any proceeding under or related to the rights contained in the FLSA.

46. In or around late March 2022, Plaintiff contacted Spears about Granite's nonpayment of her wages for time worked remotely. Failing to pay even a minimum wage for hours worked is a violation of the FLSA. Plaintiff also inquired of Spears regarding the nonpayment of additional wages she was owed for when she was promoted to manager of Granite, and unpaid commissions, and when she could expect to receive such unpaid wages and commissions.

47. On or about the morning of April 11, 2022, Plaintiff contacted Willey after she did not hear anything back from Spears. Willey stated that she would contact Spears on Plaintiff's behalf.

48. Contacting Spears and Willey about unpaid wages constitutes "complaints" under the FLSA and is therefore protected activity.

49. In direct response to Plaintiff's protected activity, Spears terminated Plaintiff's employment the evening of April 11, 2022.

50. Plaintiff was terminated as a result of engaging in protected activity under the FSLA.

51. As a direct and proximate result of Granite and Spears' actions and/or failure to act, Plaintiff has suffered and will continue to suffer a loss of earnings and other employment benefits and job opportunities. Plaintiff is thereby entitled to damages, such amount to be proven at trial.

52. Granite and Spears' retaliatory actions against Plaintiff were not based on good faith or reasonable grounds. Therefore, pursuant to 29 U.S.C. § 216(b), Plaintiff is entitled to liquidated damages in an amount equal to her damages for Granite and Spears' retaliatory actions.

## COUNT III
## FRAUDULENT HIRING

53. Plaintiff realleges and incorporates by reference paragraphs 1 through 52 above, as though fully set forth herein.

54. Granite made a statement or representation of fact through Preston when Preston told Plaintiff she would be paid $14.00 per hour plus 4% commission on all jobs on which she worked or sold.

55. Granite made a statement or representation of fact through Spears when Spears told Plaintiff she would be paid $17.00 per hour plus 7% commission if she took over the management position at Granite.

56. Granite's statements through Preston and Spears to Plaintiff regarding her wages and commissions were false.

57. Granite's statements through Preston and Spears to Plaintiff regarding her hourly rate and commissions were material to Plaintiff's decision to accept the salesperson position with Granite in October 2021 and to accept the management position January 2022.

58. Granite, through Preston and Spears, knew of the statement's falsity or was ignorant of the truth.

59. Granite, through Preston and Spears, intended that Plaintiff rely upon the statement.

60. Plaintiff was ignorant of the falsity of the statement.

61. Plaintiff justifiably relied upon the statements made by Granite through Preston and Spears.

62. Plaintiff was injured by the false statements made by Granite through Preston and Spears in that she was never paid the commissions she was promised in order to induce her to the positions she took with Granite, nor was she ever paid the $17.00 per hour she was promised if she accepted the management position at Granite. Further, Plaintiff was injured by the false statements made by Granite when she was terminated for inquiring into the status of payment of her commissions and her raise.

63. As a direct and proximate result of Defendant's actions and/or failure to act, Plaintiff has suffered and will continue to suffer a loss of earnings, employment benefits, and job opportunities. Plaintiff is therefore entitled to damages in an amount to be proven at trial, as well as any equitable remedies available to her.

## COUNT IV
## VIOLATION OF THE IDAHO WAGE CLAIM ACT
**(Failure to Pay Wages)**

64. Plaintiff realleges and incorporates by reference paragraphs 1 through 63 above, as though fully incorporated herein.

65. Granite and Spears are subject to the requirements of the Idaho Wage Claim Act ("IWCA").

66. Plaintiff earned wages for work performed for which she was not paid, including time she worked while she was on travel and commissions.

67. Plaintiff was also paid less than the hourly rate to which Granite offered and agreed.

68. Granite and Spears failed to pay Plaintiff such wages.

69. Granite and Spears are liable to Plaintiff for failure to pay such wages.

70. As a direct and proximate result of Granite and Spears' actions and/or failure to act, Plaintiff suffered a loss of earnings.  Plaintiff is therefore entitled to compensation for her unpaid wages, such amount to be proven at trial.

71. Pursuant to the IWCA, Plaintiff is entitled to either her unpaid wages plus penalties provided for in Idaho Code § 45-607, or damages in the amount of three times her unpaid wages found due and owing, whichever is greater.

## COUNT V
## VIOLATION OF THE IDAHO WAGE CLAIM ACT
**(Retaliation)**

72. Plaintiff realleges and incorporates by reference paragraphs 1 through 71 above, as though fully set forth herein.

73. The IWCA prohibits retaliation against an employee because the employee has made a complaint to the employer, or to the Idaho Department of Labor, or filed suit alleging the employee has not been paid in according with the IWCA, or because the employee has testified or may be about to testify in an investigation or hearing undertaken by the Idaho Department of Labor.

74. In or around late March 2022, Plaintiff contacted Spears about Granite's nonpayment of her wages for time worked remotely. Plaintiff also inquired of Spears regarding the nonpayment of additional wages she was owed for when she was promoted to manager of Granite, and unpaid commissions, and when she could expect to receive such unpaid wages.

75. On or about the morning of April 11, 2022, Plaintiff contacted Willey to inquire about the unpaid commissions after she did not hear anything back from Spears. Willey stated that she would contact Spears on Plaintiff's behalf regarding the unpaid commissions.

76. Such actions by Plaintiff constitute "complaints" under the IWCA and, therefore, Plaintiff engaged in protected activity under the IWCA.

77. As a result of Plaintiff engaging in protected activity, in or about the evening of April 11, 2022, Spears terminated Plaintiff's employment.

78. Plaintiff was terminated as a result of engaging in protected activity under the IWCA.

79. As a direct and proximate result of Granite and Spears' actions and/or failure to act, Plaintiff has suffered and will continue to suffer a loss of earnings and other employment benefits and job opportunities. Plaintiff is thereby entitled to damages, such amount to be proven at trial.

80. Pursuant to the IWCA, Plaintiff is entitled to damages in the amount of three times her damages found due and owing, whichever is greater.

## ATTORNEYS' FEES

81. As a further direct and proximate result of Granite and Spears' actions and/or failure to act, Plaintiff has been compelled to retain the services of counsel and has incurred and will continue to incur costs and attorney's fees. Plaintiff is therefore entitled to attorney's fees and costs incurred in pursuing this action pursuant to 29 U.S.C. § 216(b), Idaho Code § 45-615, Idaho Code § 12-120(3), and Idaho Code § 12-121. Plaintiff is entitled to an award of her attorneys' fees and costs in this matter in an amount to be determined upon judgment.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury as to all issues triable to a jury in this action.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff seeks judgment against Defendants as follows:

1. For compensatory and general damages as well as statutorily available damages in an amount as shall be proven at trial and any available equitable remedies;
2. For punitive damages;
3. For pre-judgment interest;
4. For attorney's fees pursuant to status and costs of suit; and
5. For such other and further relief as the Court deems just and proper.

Dated this 23rd day of September, 2022.

                                                     /s/
                                                   Amanda E. Ulrich
                                                   CASPERSON ULRICH DUSTIN PLLC